[Civ. No. 22871. Fourth Dist., Div. One. Nov. 2, 1981.]

META B. JORGENSEN, Plaintiff and Appellant, v.
BEACH 'N' BAY REALTY, INC., et al., Defendants and
Respondents.

**COUNSEL**

Marvin, Huiskamp & Black and John S. Huiskamp for Plaintiff and Appellant.

Rhoades & Hollywood and Daniel M. White for Defendants and Respondents.

**OPINION**

**WORK, J.**—Meta Jorgensen appeals from a judgment nonsuiting her lawsuit against her realtor broker, Beach 'N' Bay Realty, Inc., and her agents William Lavis and Robert Lossing alleging fraud, misrepresentation, breach of fiduciary duty, and negligence in their handling of her real estate sale. She correctly alleges the trial court erred in finding her evidence insufficient to allow the jury to consider any cause of action.

## Jorgensen's Evidence

Jorgensen listed a residential property, close to her own house, with an acquaintance, Lossing, an agent working for Beach 'N' Bay. This was Lossing's first listing, so he teamed with Lavis, a more experienced fellow agent at Beach 'N' Bay, agreeing Lavis would receive one-third of the sales commission. The property was listed at $214,500.

While employed by Jorgensen to sell her property, Lavis and Lossing met the Albins, a wealthy Mexican family looking for southern California real estate investments. Lavis and Lossing showed the Albins a number of commercial and residential investment properties in which the Albins expressed little interest. Lavis and Lossing then showed the Albins the Jorgensen property, and prepared their offer, "revocable upon presentation," to buy the Jorgensen property for $200,000.

The same day, Lavis and Lossing presented Albins' offer to Jorgensen and told her Beach 'N' Bay represented both Albins and Jorgensen in the transaction, and the Albins were "nice" and would make "good neighbors." Jorgensen told them she wanted another $5,000 but Lavis and Lossing discouraged her from presenting a counteroffer of $205,000, telling her they were meeting with the Albins that evening and, since the Albins were leaving town, her seeking additional money would risk losing the deal.

Jorgensen's counteroffer leaving the price at $200,000, but shortening the escrow period was accepted promptly.

Nine days later, and before escrow closed, Lavis went to Mexico, and obtained an exclusive listing agreement to resell the Jorgensen property for the Albins. The agreement was apparently prepared by Lavis before going to Mexico with a proposed sale price of $234,500.

Lavis returned from Mexico and the Jorgensen escrow was again shortened, this time at the Albins' request. When escrow closed, the agents immediately listed the property for the Albins, and soon sold it for $227,000. When Jorgensen's husband heard the property had been resold he asked Lossing for the resale price. Lossing stated he could not tell him because it was a complicated transaction and there were some exchanges involved. In fact, it was a straight cash transaction. During and after this time, the agents handled other real estate transactions for the Albins.

There are three substantial issues in this appeal:

(1) Could the jury have concluded on evidence submitted by Jorgensen that alleged misrepresentations by the agents were material?

(2) Could a jury have concluded at the close of Jorgensen's case that the agents had breached their fiduciary duties to Jorgensen? and,

(3) Was it necessary for Jorgensen to produce expert testimony on the standard of care required of real estate agents and brokers in order to go to the jury on her negligence theory? We review the correctness of the nonsuit by the established rule: "A motion for nonsuit may properly be granted ' ... when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every ligitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.' (*Card* v. *Boms*, 210 Cal. 200, 202 [291 P. 190]; see also *Blumberg* v. *M. & T. Inc.*, 34 Cal.2d 226, 229 [209 P.2d 1]; *Golceff* v. *Sugarman*, 36 Cal.2d 152, 153 [222 P.2d 665].)" (*Palmquist* v. *Mercer* (1954) 43 Cal.2d 92, 95 [272 P.2d 26].)

*Misrepresentation*

Jorgensen argues Lavis and Lossing failed to properly disclose their personal dual agency role; knowingly misrepresented that the purchasers of the home intended to live in it; did not reveal the purchasers were investors, buying the property as an investment; and failed to disclose the nature of their interest in the purchaser's successful investment, i.e., the buyers were wealthy investors interested in substantial amounts of southern California real estate, whose future business could prove very lucrative to the agents. In short, they deliberately concealed their personal motive to obtain the best deal for the Albins at her expense.

The record conclusively shows Lavis and Lossing disclosed their dual agency. Jorgensen admitted Lavis and Lossing told her that Beach 'N' Bay was representing the purchasers in the transaction; she knew that Lavis and Lossing worked for Beach 'N' Bay. Although she testified she believed Beach 'N' Bay Realty represented the Albins as well as herself and Lavis and Lossing were solely her agents, acting for no one else in the transaction, she presented no evidence of any reasonable basis for

her mistaken belief. To the extent she knew Beach 'N' Bay was also representing the Albins, her assumption Lavis and Lossing were acting independently of their employer for her, was not reasonable.

However, Lavis and Lossing had a further duty to disclose *all* material facts within their knowledge which might have affected Jorgensen's decision to accept the purchaser's offer. (*Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 782 [157 Cal.Rptr. 392, 598 P.2d 45].) Here Jorgensen's evidence was sufficient to go to the jury. Jorgensen's evidence tended to show the agents knew the Albins' purchase was for investment purposes; failed to disclose this fact to Jorgensen and intentionally misled her into believing the prospective buyers intended to reside on the property which they were purchasing; and, that the agents failed to disclose their personal substantial stake in striking a good bargain for the Albins. Such evidence would support a jury verdict for Jorgensen on theories of fraud, intentional and/or negligent misrepresentation, and/or breach of fiduciary duty.[1]

The agents contend the Albins' intent to use the property for investment purposes was immaterial and need not be disclosed. They quote Prosser on the test of materiality in support of the proposition the test "must be an objective one" and that "in particular cases, matters entirely collateral to a contract, and apparently of no significance to any reasonable man under the circumstances, have been held to be immaterial: . . . his motive or purpose in entering into the bargain . . . ." However, this quotation from Prosser, Law of Torts (4th ed. 1971) section 108, page 719, was edited to omit the following material passages "the test . . . cannot be stated in the form of any definite rule, but must depend upon the circumstances of the transaction itself," and "the question is frequently for the jury whether the statement made might justifiably induce the action taken." (*Id.*, at p. 719.) We apply an objective "reasonable person" test to these circumstances and find it conceivable a jury could find, on this evidence, an objective "reasonable person" would have insisted on a higher price had she known a purchaser was buying for an investment rather than as a residence. Whether Albins'

---

[1]These theories interrelate in that identical acts may constitute more than one tort. Where, as here, a confidential relationship unquestionably exists, proof the agents knowingly made false or misleading statements as to material facts, or deliberately concealed them (Civ. Code, § 1710, subds. 1 and 3; *Sierra Pacific Industries* v. *Carter* (1980) 104 Cal.App.3d 579 [163 Cal.Rptr. 764]), or negligently made such misrepresentations (Civ. Code, § 1710, subd. 2; *Walters* v. *Marler* (1978) 83 Cal.App.3d 1 [147 Cal.Rptr. 655]), satisfies major elements of each of these causes of action.

intent to financially profit by a quick resale of the property was a material fact, was for the jury to decide.

Further, the jury might have found it material that the agents' hoped-for future professional relationship with the Albins involved a far greater enrichment potential than their one-shot transaction with Jorgensen. Jorgensen's proof shows a number of terms in the transaction documents, drawn up by her agents, which appear to be unfavorable to her. Although any transaction is likely to contain terms more favorable to one side than the other and, standing alone, such terms do not show the agreement as a whole to be unfair, additional evidence tended to show the agents had a conflict of interest, the extent of which they concealed from Jorgensen, who relied upon representations in accepting the proposed transactions. A jury could reasonably find that, had the agents fully disclosed their potential interest in securing a successful investment transaction on behalf of the Albins, she might well have relied less completely on them and obtained more favorable terms for herself.

The question of materiality should have been given to the jury.

### Breach of Fiduciary Duty

"It is well settled in this state that the law imposes on a real estate broker the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary." (*Ford* v. *Cournale* (1973) 36 Cal.App.3d 172, 180 [111 Cal.Rptr. 334, 81 A.L.R.3d 704].) The California Supreme Court said in *Batson* v. *Strehlow* (1968) 68 Cal.2d 662 [68 Cal.Rptr. 589, 441 P.2d 101], that "[t]his relationship not only imposes upon him the duty of acting in the highest good faith towards his principal but precludes the agent from obtaining any advantage over the principal in any transaction had by virtue of his agency. [Citation.] 'Such an agent is charged with a duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision. [Citations.]'" (*Id.*, pp. 674-675.)

The agents agree they had a fiduciary duty toward Jorgensen but contend it did not impose upon them a duty to disclose the above facts.

Since it is settled law in California that a real estate agent's fiduciary relationship to his client is the same as that of a trustee to a trustor, we look to the law defining the obligations of trustees to determine its ex-

tent. Civil Code section 2230 states: "Neither a trustee nor any of his agents may take part in any transaction concerning the trust in which he *or any one for whom he acts as agent has an interest, present or contingent, adverse to that of his beneficiary*, except as follows: [¶] 1. When the beneficiary, having capacity to contract, with a *full knowledge of the motives of the trustee, and of all other facts concerning the transaction which might affect his own decision*, and without the use of any influence on the part of the trustee, permits him to do so . . . ." (Italics added.) This statute establishes a fiduciary's responsibility when acting as an agent for a party holding an adverse interest will be held to the same duty of disclosure as a fiduciary who is acting for himself. It is not necessary the agents directly profit from the transaction in order for them to be held liable for a breach of the duty of disclosure. (*St. James Armenian Church of Los Angeles* v. *Kurkjian* (1975) 47 Cal.App.3d 547 [121 Cal.Rptr. 214]; *Brown* v. *Critchfield* (1980) 100 Cal.App.3d 858, 869 [161 Cal.Rptr. 342].) The statute also sets out a stricter standard of materiality regarding information which must be disclosed by one acting in a dual fiduciary capacity; there must be disclosure of all information which might affect the principal's decision. "'A fact is material . . . if it is one which the agent should realize would be likely to affect the judgment of the principal in giving his consent to the agent to enter into the particular transaction on the specified term.'" (*Rattray* v. *Scudder* (1944) 28 Cal.2d 214, 224 [153 P.2d 433].)

Using the standard of disclosure for one acting in a dual fiduciary capacity, we hold Jorgensen made out a prima facie case of breach of fiduciary duty. The jury could have inferred from her evidence the agents should have known how a number of facts they neglected to tell Jorgensen might affect her decision to accept the offer.

Further, "'"[w]hen the acts of an agent have been questioned by his principal and the fiduciary relationship has been established, the burden is cast upon the agent to prove that he acted with the utmost good faith toward his principal [citations] and that he make [*sic*] a full disclosure prior to the transaction of all the facts relating to the transaction under attack. [Citations]."'" (*Timmsen* v. *Forest E. Olson, Inc.* (1970) 6 Cal.App.3d 860, 871 [86 Cal.Rptr. 359], quoting *Bate* v. *Marsteller* (1959) 175 Cal.App.2d 573, 580-581 [346 P.2d 903].) In *Timmsen* a nonsuit was reversed where the plaintiffs alleged their real estate agent violated his fiduciary duty toward them by persuading them to sell their property to another client of defendant's real estate firm, on terms allegedly unfavorable to the plaintiffs.

Here, the same rule applies. Thus, Jorgensen presented a prima facie case of violation of fiduciary duty by simply showing an existing fiduciary relationship, and alleging a violation of the agents' duty; nothing more is required to avoid nonsuit.

### Negligence—Expert Testimony

The trial court ruled Jorgensen could not establish negligence except through expert testimony.

The correct rule on the necessity of expert testimony has been summarized by Bob Dylan: "You don't need a weatherman to know which way the wind blows."[2] The California courts, although in harmony, express the rule somewhat less colorfully and hold expert testimony is not required where a question is "resolvable by common knowledge." (*Cobbs* v. *Grant* (1972) 8 Cal.3d 229, 236 [104 Cal.Rptr. 505, 502 P.2d 1]; see also *Mavroudis* v. *Superior Court* (1980) 102 Cal.App.3d 594, 605 [162 Cal.Rptr. 724].)

While Jorgensen's negligence theory is expressed in one cause of action, we stress she, in fact, alleges two distinct varieties of negligence: violation of a statutory duty (negligence per se), and failure to exercise reasonable care in setting the sale price of Jorgensen's property.

■ Jorgensen claims Civil Code section 2228 et seq., and Business and Professions Code section 10176, subds. (a), (b) and (i) set a standard for a duty of care to be exercised by a real estate agent toward his client and that violation of such statutory duty is negligence per se.

These statutes require a fiduciary to act in good faith, establish the previously discussed requirements of disclosure in dual fiduciary situations, and prohibit a real estate agent from "[m]aking any substantial misrepresentation," "[m]aking any false promises of a character likely to influence, persuade or induce," or engaging in "[a]ny other conduct, whether of the same or a different character specified in this section, which constitutes fraud or dishonest dealing." (Bus. & Prof. Code, § 10176, subds. (a), (b) and (i).) We reject the notion honesty and fair dealing is beyond the realm of "common knowledge" of lay jurors whether the honesty and fair dealing be that of hod carriers or real estate salespersons. We are convinced acts constituting "fraud," when

---

[2]Bob Dylan, "Subterranean Homesick Blues" from *Bringing It All Back Home.*

committed by laymen are not something less when committed by professional fiduciaries.

The agents rely on *Estate of Beach* (1975) 15 Cal.3d 623 [125 Cal. Rptr. 570, 542 P.2d 994], in support of their contention on this point. Not only did *Beach* not deal with a statutory duty of fair dealing, it did not deal with a duty of fair dealing at all. Rather than asserting dishonesty, the plaintiff in *Estate of Beach* asserted the defendant performed its duty negligently by failing to sell certain stock in the trust which subsequently decreased in value. The court determined that, as a professional fiduciary, the defendant bank was subject to a higher standard of care than that applied to a lay executor, but that to hold the bank to such a higher standard of care required the testimony of experts. However, that case involved technical aspects of trust administration—a far cry from the case before us which deals with an allegation of concealment in violation of a statutory duty.

■ The other type of negligence alleged by Jorgensen—lack of due care in setting the sale price for the Jorgensen property—is more technical in nature. Arguably, the standard in the industry for determining sale price would require expert testimony to establish. However, Lossing—himself a real estate agent, and therefore qualified as an expert on industry practices—testified: "It's the normal practice of a person in the real estate industry to canvas the neighborhood records to determine what has sold, and try to apply a comparable to a particular property." Lossing also testified he had no input into the sale price—$214,500—for which he listed the Jorgensen property. He further testified that although this was his first listing as a real estate agent, he did not have anyone else at Beach 'N' Bay look into the value of the property; he had made an analysis from what he found on a sheet of paper which he later destroyed. Lossing claimed Jorgensen herself had set the price, which he accepted. However, Jorgensen testified her agents, not she, set the sale price.

This evidence sufficiently apprises the jury of the procedure normally followed by an ordinary member of the real estate profession. On the above evidence, in addition to the fact that the property in question subsequently was sold by the Albins for a substantially higher price, the jury could conclude, without the benefit of further expert testimony, that by failing to inform Jorgensen of Lossing's analysis of comparable properties or by failing to seek the advice of a more experienced realtor, the agents set the sale price for the Jorgensen property negligently low.

The almost immediate resale strongly suggests the Jorgensen sale price was below comparable values. Jorgensen presented sufficient evidence for the jury to intelligently consider the negligence cause of action. Our conclusion on this point is supported by the fact none of the cases cited to us by counsel, or read by the court, dealing with negligent conduct on the part of real estate agents, appear to have required expert testimony. (See, e.g., *Earp* v. *Nobmann* (1981) 122 Cal.App.3d 270 [175 Cal.Rptr. 767]; *Timmsen* v. *Forest E. Olsen, Inc., supra,* 6 Cal.App.3d 860; *Rianda* v. *San Benito Title Guar. Co.* (1950) 35 Cal.2d 170 [217 P.2d 25].)

### Conclusion

We have looked at this case solely in terms of the sufficiency of Jorgensen's evidence to go to the jury; we express no opinion as to the ultimate outcome of the case.

The nonsuit is reversed and the matter remanded for new trial.

Staniforth, Acting P. J., and Wiener, J., concurred.

A petition for a rehearing was denied November 24, 1981.