**In re Theodore E. HONKANEN and Marcella J. Honkanen, Debtors.**

**Marcella J. Honkanen, Appellant,**

v.

**J. Michael Hopper, in his capacity as Chapter 7 Trustee for Susan J. Archer, Respondant.**

**BAP No. EC 10–1102–ZJuMk.**
**Bankruptcy No. 08–26680.**
**Adversary No. 08–02469.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 18, 2010.

Decided Feb. 16, 2011.

Gregory Joseph Hughes, Esquire appeared for appellant Marcella J. Honkanen.

J. Russell Cunningham appeared for appellee J. Michael Hopper.

Before: ZIVE,[1] JURY, and MARKELL, Bankruptcy Judges.

## OPINION

ZIVE, Bankruptcy Judge.

## OVERVIEW

Marcella Honkanen ("Honkanen") appeals a memorandum decision holding her liable for fraud while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4).[2] Honkanen raises three issues on appeal: 1) whether the bankruptcy court erred in determining that the "fiduciary capacity" requirement of 11 U.S.C. § 523(a)(4) was satisfied, 2) whether the bankruptcy court erred in determining that the requirements for application of the doctrine of issue preclusion were satisfied, and 3) whether Appellee J. Michael Hopper ("Hopper") carried his burden of proving that Honkanen committed fraud. We conclude the fiduciary capacity requirement of § 523(a)(4) was not satisfied. Further, we

---

1. Hon. Gregg W. Zive, United States Bankruptcy Judge for the District of Nevada, sitting by designation.

2. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

decide that issue preclusion was not properly applied because fraud was not necessarily decided in the state court action and, therefore, Hopper did not prove Honkanen committed fraud. We REVERSE the bankruptcy court's decision.

## FACTS

Honkanen filed a Chapter 7 bankruptcy petition May 21, 2008, in the Eastern District of California. Creditor Susan Archer ("Archer") commenced an adversary proceeding on August 22, 2008, to determine the dischargeability of a state court judgment rendered in her favor and against Honkanen after a jury trial. The complaint alleged a claim for relief solely under § 523(a)(4). As the basis for her dischargeability claim, Archer relied upon the doctrine of issue preclusion, or collateral estoppel, predicated upon a state court jury verdict. Archer contended the California state court jury found Honkanen had intentionally breached her fiduciary duty to Archer by making misrepresentations and concealing information while acting in a fiduciary capacity.

Honkanen had acted as Archer's real estate broker in a transaction in which Archer attempted to purchase real property from a third party. After the transaction was not consummated, Archer sued Honkanen in state court accusing Honkanen of performing her real estate licensee duties negligently and of intentionally breaching her fiduciary duty to Archer. The alleged breach consisted of Honkanen making intentional misrepresentations to Archer concerning the real estate purchase agreement and the insufficiency of Archer's performance, in addition to failing to disclose the deficiency in Archer's performance.

In the state court suit, Archer also accused Honkanen of breaching her fiduciary duty of loyalty to Archer, the buyer, by acting in the interest of the seller rather than in Archer's interest. Archer asserted Honkanen had falsely informed the seller that Archer could not satisfy the financing requirements for the purchase and that Archer was in breach of the sale agreement. While the jury instructions did not include an instruction about any intentional tort committed by Honkanen against Archer, the jury awarded Archer damages in the amount of $356,000 for negligent and intentional breach of Honkanen's fiduciary duty to Archer.

In her answer to the nondischargeability complaint, Honkanen admitted she was a real estate broker licensed by the state of California, that she served as the real estate agent and broker for Archer as the buyer in the transaction, that the jury found Honkanen breached her fiduciary duty to Archer, that her breach was both negligent and intentional, and that her breach was a substantial factor in causing harm to Archer in the amount of $356,000. Honkanen denied, however, that the jury verdict was nondischargeable under § 523(a)(4).

At trial, Archer's Chapter 7 trustee, Hopper, intervened as the plaintiff because he had succeeded to Archer's claim against Honkanen.[3] The only evidence admitted at trial was the original state court complaint, the state court judgment, and the state court jury instructions. The bankruptcy court rendered its memorandum decision on September 3, 2009. It held that the issues raised in the state court action were actually litigated and necessarily decided when the state court jury returned a verdict of intentional breach of fiduciary duty, that the requirements of

---

**3.** On May 5, 2009, Archer also filed for Chapter 7 relief.

§ 523(a)(4) were met, and that the state court judgment was nondischargeable.

The bankruptcy court found the state court had previously determined that Honkanen owed Archer a fiduciary duty, that the Ninth Circuit in *Bugna v. McArthur (In re Bugna)*, 33 F.3d 1054, 1057 (9th Cir.1994), held that a real estate agent was a fiduciary within the narrow meaning of § 523(a)(4), that Archer's intentional breach of that duty injured the plaintiff and that the resulting damages were therefore nondischargeable.

The bankruptcy court's judgment was entered on March 26, 2010. Honkanen filed her notice of appeal March 24, 2010. The premature notice of appeal is deemed to have been filed on the same day as the entry of judgment, pursuant to Fed. R. Bankr.P. 8002(a).

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 1334(b) over this core proceeding under 28 U.S.C. § 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158(b).

## STANDARD OF REVIEW

■ The court of appeals and the bankruptcy appellate panel ("BAP") review a bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo. *Canatella v. Towers (In re Alcala)*, 918 F.2d 99, 103 (9th Cir.1990) (citing *Bank of Honolulu v. Anderson (In re Anderson)*, 833 F.2d 834, 836 (9th Cir.1987)); Fed. R. Bankr.P. 8013. Decisions on issue preclusion are reviewed de novo. *Littlejohn v. United States*, 321

F.3d 915, 919 (9th Cir.2003). The issue of dischargeability of a debt is a mixed question of fact and law that is reviewed de novo. *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir.2004) (citing *Diamond v. Kolcum (In re Diamond)*, 285 F.3d 822, 826 (9th Cir.2002)).

## DISCUSSION

### A. The Bankruptcy Court Erred When it Determined that § 523(a)(4)'s Fiduciary Capacity Requirement Had Been Met.

■ Section 523(a)(4) excepts from discharge debts that arise from "fraud or defalcation while acting in a fiduciary capacity...." To prevail on a nondischargeability claim under § 523(a)(4) the plaintiff must prove not only the debtor's fraud or defalcation, but also that the debtor was acting in a fiduciary capacity when the debtor committed the fraud or defalcation. *See In re Teichman*, 774 F.2d 1395, 1398 (9th Cir.1985); and *In re Bugna*, 33 F.3d at 1057.

■ The broad definition of fiduciary under nonbankruptcy law—a relationship involving trust, confidence, and good faith—is inapplicable in the dischargeability context. *Cal–Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1125 (9th Cir.2003);[4] *Lewis v. Short (In re Short)*, 818 F.2d 693, 695 (9th Cir.1987); *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986); *Woosley v. Edwards (In re Woosley)*, 117 B.R. 524, 529 (9th Cir. BAP 1990). For purposes of § 523(a)(4), the Ninth Circuit has adopted a narrow definition of "fiduciary."[5] To fit within § 523(a)(4), the fidu-

---

**4.** Neither party cited to *Cantrell* in the underlying action in the bankruptcy court.

**5.** A narrow definition of "fiduciary" is consistent with the policy of construing the exceptions to discharge in § 523 strictly against the

objecting creditor and liberally in favor of the debtor. *See Follett Higher Education Group, Inc. v. Berman (In re Berman)*, 629 F.3d 761, 765 (7th Cir.2011); *In re Crosswhite*, 148 F.3d 879, 881 (7th Cir.1998). In *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333–34, 55

ciary relationship must be one arising from an express[6] or technical[7] trust that was imposed before, and without reference to, the wrongdoing that caused the debt as opposed to a trust *ex maleficio,* constructively imposed because of the act of wrongdoing from which the debt arose. *Ragsdale,* 780 F.2d at 796; *Cantrell,* 329 F.3d at 1125 (*citing Lewis v. Scott (In re Lewis),* 97 F.3d 1182, 1185 (9th Cir.1996)).

 While the scope of the term "fiduciary capacity" is a question of federal law, the Ninth Circuit has considered state law to ascertain whether the requisite trust relationship exists. *Ragsdale,* 780 F.2d at 796; *In re Cantrell,* 329 F.3d at 1125; and *In re Woosley,* 117 B.R. at 529. For a trust relationship under § 523(a)(4) to be established, the applicable state law must clearly define fiduciary duties and identify trust property. *See Runnion v. Pedrazzini (In re Pedrazzini),* 644 F.2d 756, 759 (9th Cir.1981). Trusts arising as remedial devices to breaches of implied or express contracts—such as resulting or constructive trusts—are excluded, while statutory trusts that bear the hallmarks of an express trust are not.[8] *Id.;* 4 *Collier on Bankruptcy* 523.10[1][d] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010). The mere fact that state law puts two parties in a fiduciary-like relationship does not necessarily mean it is a fiduciary

relationship within 11 U.S.C. § 523(a)(4). *See generally Pedrazzini,* 644 F.2d at 759.

The Ninth Circuit Bankruptcy Appellate Panel has opined in three § 523(a)(4) cases involving a real estate licensee: *Woosley,* 117 B.R. 524, *Evans v. Pollard (In re Evans),* 161 B.R. 474 (9th Cir. BAP 1993), and *Rettig v. Peters (In re Peters),* 191 B.R. 411 (9th Cir. BAP 1996).

In *Woosley* and *Peters,* 117 B.R. at 529, 191 B.R. at 419, the BAP reasoned that debtor's real estate license carried with it fiduciary obligations to his principals under California law when carrying out licensed activities. The BAP held that the fiduciary obligations accompanying a real estate licensee's licensed activities are within the purview of "fiduciary capacity" required by § 523(a)(4).

The BAP distinguished *Woosley* in *Evans,* 161 B.R. at 478. That panel questioned whether a real estate broker's general fiduciary obligations of undivided service and loyalty in the absence of an identifiable trust res are sufficient to establish fiduciary capacity for purposes of § 523(a)(4). It held that general fiduciary obligations are not sufficient to fulfill the fiduciary capacity requirement of § 523(a)(4) in the absence of an express,

---

S.Ct. 151, 79 L.Ed. 393 (1934), the Supreme Court stated that the reference to "fiduciary capacity" in the nondischargeability exceptions was "strict and narrow." *See also Cantrell,* 329 F.3d at 1125.

**6.** Under California law an express trust requires five elements: 1) present intent to create a trust, 2) trustee, 3) trust property, 4) a proper legal purpose, and 5) a beneficiary. Cal. Prob.Code §§ 15201–15205; *Keitel v. Heubel,* 103 Cal.App.4th 324, 126 Cal.Rptr.2d 763, 773 (Cal.Ct.App.2002).

**7.** A technical trust under California law is described as "those arising from the relation

of attorney, executor, or guardian, and not to debts due by a bankrupt in the character of an agent, factor, commission merchant, and the like." *Royal Indemnity Co. v. Sherman,* 124 Cal.App.2d 512, 269 P.2d 123, 125 (Cal.Ct. App.1954); *Young v. Clark,* 7 Cal.App. 194, 93 P. 1056, 1057 (1907). A technical trust is not one implied by contract. *Young,* 93 P. at 1057.

**8.** A trust may be created by statute, but even if a trust is created by statute, the trust must arise before the act of wrongdoing and not as a result of it. *Pedrazzini,* 644 F.2d at 758.

technical or statutory trust, and an identifiable trust res. *Id.*[9]

The *Peters* court quoted from *Woosley* without conducting any further analysis of the § 523(a)(4) fiduciary capacity requirement. While citing *Evans*, it did not note the opposite holdings of those two cases. If there was a trust in *Peters*, it was *ex maleficio*.

In a case involving a § 523(a)(4) action against a real estate licensee, *Bugna v. McArthur (In re Bugna)*, *supra*, the Ninth Circuit did not independently analyze the definition of fiduciary capacity required by § 523(a)(4), but instead merely relied upon the language in *Woosley* and *Ragsdale* for its finding that a fiduciary relationship existed when the debtor was both a real estate broker and a partner. 33 F.3d 1054, 1057 (9th Cir.1994).

Here, the bankruptcy court relied in great part on the Ninth Circuit's analysis of § 523(a)(4) in *Bugna* to find that the fiduciary capacity requirement of § 523(a)(4) was satisfied by the real estate broker relationship between Honkanen (as broker) and Archer (as client).

Neither *Bugna* nor *Woosley* identified the "trust" required by § 523(a)(4). The trust subsumed within the fiduciary capacity requirement of § 523(a)(4) was not closely considered in either of those two cases; whereas in other cases applying § 523(a)(4) it was at the heart of the § 523(a)(4) analysis. *See e.g. Pedrazzini,* 644 F.2d 756 (where the court found § 523(a)(4) did not apply because there was no trust res); *Cantrell,* 329 F.3d 1119 (where the court found § 523(a)(4) did not apply because California law did not make corporate officers or directors trustees of corporate assets); *Ragsdale,* 780 F.2d 794 (where the court found the fiduciary requirement of § 523(a)(4) was satisfied because under California law partners were trustees of partnership assets as a matter of statute).

Neither the Ninth Circuit nor the BAP supply any reasoning for not considering, in addition to fiduciary obligations, whether an express, technical, or statutory trust existed.

In *Cantrell,* the Ninth Circuit decided an issue of first impression and interpreted California corporate law to conclude that while officers and directors of a corporation are imbued with the fiduciary duties of an agent and certain duties of a trustee, they are not trustees with respect to corporate assets and, therefore, are not fiduciaries within the meaning of § 523(a)(4). 329 F.3d at 1127. In *Cantrell,* Cal–Micro, the plaintiff, contended that under California law a corporate officer is a statutory trustee with respect to corporate assets, but the court rejected that contention because the cases relied upon by Cal–Micro merely held that officers owe fiduciary duties in their capacity

---

**9.** The BAP cites a California statute in *Evans,* Cal. Bus. & Prof.Code § 10145, that was not cited in *Woosley.* Section 10145 requires real estate agents who accept funds on behalf of someone else to deposit all of those funds, not immediately placed in a neutral escrow account, into a client trust account maintained by the broker. The statute requires all funds to be maintained by the broker until disbursed in accordance with instructions from the person entitled to the funds.

In *Evans* the BAP speculated that what the *Woosley* court meant, in the absence of any analysis as to whether a trust res existed, was that the funds placed with the broker and the investment itself constituted a trust res sufficient to support fiduciary capacity under § 523(a)(4). *Evans,* 161 B.R. at 478. The *Woosley* court did not cite Cal. Bus. & Prof. Code § 10145. Of course there were no funds to be deposited or maintained in either *Woosley* or in the instant matter, again demonstrating there was no trust in *Woosley,* nor in this case, because of the absence of trust res.

as agents of a corporation—but failed to hold that officers are trustees of an express, technical or statutory trust with respect to corporate assets. 329 F.3d at 1126. The Circuit relied on the reasoning of the California Supreme Court in *Bainbridge v. Stoner*, 16 Cal.2d 423, 106 P.2d 423 (1940), which held, "[A] director of a corporation acts in a fiduciary capacity, and the law does not allow him to secure any personal advantage as against the corporation or its stockholders. However, strictly speaking, the relationship is not one of trust, but of agency. . . ." *Cantrell*, 329 F.3d at 1126 (*quoting Bainbridge*, 106 P.2d at 426).

▮ Following a long line of Ninth Circuit authority, *Cantrell* set forth the requirements for § 523(a)(4) which we are unable to reconcile with *Bugna*. We have tried to harmonize, to the extent possible, the inconsistencies between *Bugna* and *Cantrell*. We acknowledge that *Cantrell* is inconsistent, and perhaps irreconcilable, with *Bugna*. That conflict, however, is not within our jurisdiction to address, and we defer to the Ninth Circuit Court of Appeals in resolution of that conflict. Faced with two conflicting Court of Appeals decisions, *Cantrell* controls in this case because it is the most-recent and, in our view, the better-reasoned of the two decisions. Any remaining inconsistency will have to be resolved by the Ninth Circuit.

▮ Based on the requirements set forth in *Cantrell*, a California real estate licensee does not meet the fiduciary capacity requirement of § 523(a)(4) solely based on his or her status as a real estate licensee. General fiduciary obligations are not sufficient to fulfill the fiduciary capacity requirement in the absence of a statutory, express, or technical trust.

Honkanen never held any property in trust for Archer. While she did represent Archer in a real estate transaction that was ultimately not consummated, and while the jury found her to have negligently and intentionally breached her fiduciary duty to Archer, Honkanen did not hold any property in trust. In the absence of a trust res, a fundamental requirement to form a trust, there was no express, technical or statutory trust formed between Honkanen and Archer. Thus, consistent with the reasoning and holding of *Cantrell*, Honkanen was not acting in a fiduciary capacity as required by § 523(a)(4). Accordingly, the Archer state court judgment against Honkanen is dischargeable.

We acknowledge that our holding is at odds with older BAP cases. *See e.g. Woosley*, 117 B.R. at 529 (holding that fiduciary duties imposed on a real estate licensee by California law necessarily qualify such licensees as fiduciaries within the meaning of § 523(a)(4)); *accord, Peters*, 191 B.R. at 419. However, cases which have been overruled, actually or effectively, by subsequent decisions of the Ninth Circuit Court of Appeals or the United States Supreme Court do not bind us. 9th Cir. BAP Rule 8013–1(c)(1) (2010); see *People's Capital and Leasing Corp. v. Big3D, Inc. (In re Big3D, Inc.)*, 438 B.R. 214, 226 (9th Cir. BAP 2010). The Ninth Circuit employs a similar rule in deciding whether it is bound by its prior published decisions. *See Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir.2009) (holding that a three-judge panel of the Court of Appeals is not bound by prior Court of Appeals decision on point when the theory or reasoning of the prior decision has been so undermined by subsequent Supreme Court authority that the prior decision and the Supreme Court authority are irreconcilable); *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir.2003) (en banc) (same).

In this instance, the theory underlying *Woosley* and *Peters*—that all California real estate brokers qualify as fiduciaries

under § 523(a)(4)—is irreconcilable with *Cantrell.* Accordingly, *Cantrell's* holding and analysis take away whatever binding quality *Woosley* and *Peters* possessed and require us to find that in the absence of an express, technical, or statutory trust and a clear identifiable trust res the fiduciary capacity requirement of § 523(a)(4) is not satisfied.

**B. The Bankruptcy Court Erred When it Held that Honkanen was Collaterally Estopped from Relitigating the Issue of Fraud under § 523(a)(4).**

The issues of whether Hopper carried his burden of proving fraud, and whether the bankruptcy court erred in determining that the requirements of issue preclusion were satisfied, are interrelated because there was no evidence proffered of fraudulent conduct other than the judgment and the state court complaint. If the doctrine of issue preclusion is inapplicable, it follows that Hopper failed to prove fraud.

**1. *Issue Preclusion***

[14–18] The doctrine of issue preclusion applies in dischargeability proceedings. *Grogan v. Garner,* 498 U.S. 279, 284–85, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Issue preclusion, or collateral estoppel, bars a party from relitigating any issue necessarily included in a prior, final judgment. *Malkoskie v. Option One Mortgage Corp.,* 188 Cal.App.4th 968, 115 Cal.Rptr.3d 821, 825 n. 4 (2010) (*citing Rice v. Crow,* 81 Cal.App.4th 725, 97 Cal. Rptr.2d 110, 116–17 (2000)). The party asserting the doctrine has the burden of proving that all of the threshold requirements have been met. *Kelly v. Okoye (In re Kelly),* 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd,* 100 F.3d 110 (9th Cir.1996).

To meet this burden, the moving party must have pinpointed the exact issues litigated in the prior action and introduced a record revealing the controlling facts. *Kelly,* 182 B.R. at 258. Reasonable doubts about what was decided in the prior action should be resolved against the party seeking to assert preclusion. *Id.*

■ In determining the preclusive effect of a state court judgment, federal courts must, as a matter of full faith and credit, apply that state's collateral estoppel principles. 28 U.S.C. § 1738; *Kelly,* 182 B.R. at 258 (*citing Grogan,* 498 U.S. at 284, 111 S.Ct. 654). "[A] bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action." *Grogan,* 498 U.S. at 284, 111 S.Ct. 654.

■ Under California law, generally, five requirements must be met for prior judgments to be given collateral estoppel effect: [10] 1) the issue sought to be precluded from relitigation must be identical to that decided in the former proceeding; 2) the issue must have been actually litigated in the former proceeding; 3) it must have been necessarily decided in the former proceeding; 4) the decision in the former proceeding must be final and on the merits; and 5) the party against whom preclusion is being sought must be the same as the party to the former proceeding. *Kelly,* 182 B.R. at 258.

**2. *Fraud under § 523(a)(4)***

■ "Fraud" under § 523(a)(4) means actual fraud. *Roussos v. Michaelides (In re Roussos),* 251 B.R. 86, 91 (9th Cir. BAP 2000) (*citing Bugna,* 33 F.3d at 1057). Actual fraud involves conscious

---

10. These requirements have been combined by some courts but the essential elements remain the same. *See e.g. Rice,* 97 Cal. Rptr.2d at 117.

misrepresentation, or concealment, or non-disclosure of a material fact which induces the innocent party to enter into a contract. Cal. Civ.Code § 1572; *Odorizzi v. Bloomfield School Dist.*, 246 Cal.App.2d 123, 54 Cal.Rptr. 533, 538 (1966). To prove actual fraud the plaintiff must prove: 1) defendant made a misrepresentation, concealment, or non-disclosure of a material fact; 2) defendant had knowledge that what he was saying was false; 3) defendant intended to induce plaintiff's reliance; 4) plaintiff justifiably relied; and 5) plaintiff suffered damage as a result. *Id.*

The court in *Jorgensen v. Beach 'N' Bay Realty, Inc.*, 125 Cal.App.3d 155, 177 Cal. Rptr. 882, 885 (1981), reasoned that where evidence tended to show that the defendant real estate agent knew certain material facts, that the defendant failed to disclose those facts to plaintiff, and that the defendant intentionally mislead plaintiff as to those facts; that evidence would support a jury verdict on the theories of fraud, intentional and/or negligent misrepresentation, and/or breach of fiduciary duty. The *Jorgensen* court stated that those theories interrelate in that identical acts may constitute more than one tort. *Jorgensen* reasoned that where a confidential relationship unquestionably exists, proof that the agent was knowingly making false or misleading statements as to material facts,

or deliberately concealing them, or negligently making such misrepresentations satisfies major elements of each of these causes of action. *Id.*

■ The bankruptcy court found that Archer had alleged in her dischargeability complaint, which mirrored her state court complaint, all of the "elements" necessary to prove actual fraud.[11] The bankruptcy court found that Archer proved all of these allegations in state court, as established by the jury's verdict,[12] and that Honkanen was accordingly precluded from relitigating these issues.

Honkanen argues that issue preclusion should not apply in this case because the cause of action "fraud" was not (1) identical to that decided in the former proceeding, (2) was not litigated, and (3) was not necessarily decided in the state court proceedings.[13] While a bankruptcy court can properly give preclusive effect to those elements of a claim that are identical to the elements required for another cause of action which were actually litigated and determined in the prior action, that was not the case here. *See Grogan*, 498 U.S. at 284, 111 S.Ct. 654; *see also, Malkoskie v. Option One Mortgage Corp.*, 115 Cal. Rptr.3d at 824–25.

---

11. The bankruptcy court found that the complaint alleges that the "defendant assured [Archer] that her tender of performance was adequate." "Plaintiff was advised by defendant ... that her tender of these items satisfied her requirements under the contract." "Said representation was intentionally false." Memorandum Decision P. 4 ¶ 26 (citing Plaintiff's Complaint ¶ 7). "Defendant ... intentionally concealed the seller's objections from plaintiff, denying her the opportunity to cure the defaults." *Id.* at P. 5 ¶ 5 (citing Plaintiff's Complaint ¶ 8). "Such statements ... were made with the intent to induce the plaintiff to breach the 2004 contracts and induce seller to cancel the contacts, all to plaintiff's direct detriment." *Id.* at P. 5 ¶ 8 (citing Plaintiff's

Complaint ¶ 10). The bankruptcy court also correctly found that the complaint refers to harm sustained by Archer in the amount of $356,000, resulting from the defendant's actions. *Id.* at P. 5 ¶ 11 (citing Plaintiff's Complaint ¶ 15).

12. As discussed above, the state court jury found that Honkanen intentionally and negligently breached her fiduciary duty to Archer.

13. Appellant has not raised any issue with the fourth and fifth elements of issue preclusion and therefore those elements are not discussed here.

Because the jury may have found an intentional breach of fiduciary duty based on Honkanen's breach of her duty of loyalty, and not based on her intentional misrepresentations, we cannot say all of the elements of actual fraud are identical to those found in the state court proceeding. As we stated earlier, all doubts about what was decided in the state court action are to be construed against the party seeking preclusion. Here, Hopper did not meet his burden of proving that the elements of fraud were actually litigated because he did not introduce any record that would reveal controlling facts about what was actually litigated in the state court. He could have introduced a transcript into evidence, but he did not. Pleadings are not evidence of what the jury actually decided. Therefore, this court cannot speculate as to what was actually litigated or necessarily decided at the state court, and issue preclusion does not apply.

## CONCLUSION

Honkanen did not hold any property in "trust" for Archer's benefit and, therefore, the fiduciary capacity requirement of § 523(a)(4) was not proven. Further, the bankruptcy court erroneously found fraud based on its application of issue preclusion. Hopper did not meet his burden of proving that all of the elements of issue preclusion were met, and therefore, the doctrine does not apply. The bankruptcy court's judgment is REVERSED.