Filed 4/17/14  Mastantuono v. Creedside Financial CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| PASQUALE MASTANTUONO et al.,<br><br>  Plaintiffs, Cross-defendants and<br>  Respondents,<br><br>v.<br><br>CREEKSIDE FINANCIAL, INC. et al.,<br><br>  Defendants, Cross-complainants<br>  and Appellants. | 2d Civil No. B244966<br>(Super. Ct. No. CV098199)<br>(San Luis Obispo County) |

      Plaintiffs invested in a construction loan that was arranged and administered by a real estate broker.  The loan went into default.  Plaintiffs foreclosed and invested additional money to complete the project.  Plaintiffs sued the broker for breach of fiduciary duty and other causes of action.  Third parties claiming to be additional investors in the project cross-complained to quiet title to an interest in the land.

      The trial court, sitting without a jury, found the defendant broker committed numerous breaches of fiduciary duties owed to plaintiffs and awarded damages.  The court also found plaintiffs were the only investors, and quieted title in plaintiffs against cross-complainants.  We affirm.

FACTS

Hubert La Prade is a licensed real estate broker and the sole shareholder and employee of Creekside Financial, Inc. (Creekside), a licensed real estate broker corporation. La Prade spoke to Pasquale and Karen Mastantuono about investing in a trust deed. La Prade told them he was collecting funds to finance the construction of a house on a parcel of property in Templeton. David Graves would be the homebuilder.

La Prade represented that the property would be worth over a million dollars when the house was completed. La Prade asked the Mastantuonos to invest $300,000. Pasquale Mastantuono asked La Prade if $500,000 "would do the whole thing." La Prade said it would. The loan was to be for the construction of the house, not for the purchase of the property. The Mastantuonos believed Graves already owned the property. The Mastantuonos gave La Prade a check for $500,000 made out to Creekside.

La Prade prepared a note and deed of trust for $700,000 in favor of the Mastantuonos and Creekside. The deed of trust showed the Mastantuonos holding a 71.429 percent interest and Creekside holding a 28.571 percent interest. The Mastantuonos thought the loan was for $500,000, not $700,000. La Prade did not tell them that the loan was not fully funded or that he intended to bring in other investors.

The note bore interest at 12.5 percent. La Prade told the Mastantuonos that they would receive 12 percent interest. La Prade testified that the extra half percent was his loan servicing fee. Loan disclosure documents stated there would be no loan servicing fee.

A disclosure statement lists Graves's monthly income at $20,900 per month. Under expenses it states "N/A." The statement discloses no debt. La Prade testified he assumed Graves's income was $20,900 per month based on what other contractors were making. La Prade testified he was unaware of any debts owed by Graves. The evidence showed Graves had liabilities of $7 million.

The loan escrow closed with the Mastantuonos' $500,000 as the only funding for the $700,000 loan. Business and Professions Code section 10238,

2

subdivision (h)(4)(B) requires a construction loan to be fully funded prior to the recording of a deed of trust.

Unknown to the Mastantuonos, a simultaneous escrow had been opened to purchase the land. The purchase escrow was funded entirely with the proceeds of the Mastantuonos' loan. After the close of escrow, only $95,851 was available to complete the construction of the home. The estimated cost of completion was $612,000.

La Prade claims that after close of escrow he obtained other investors for the remaining $200,000 principal balance of the loan. He produced no credible documentary evidence to support the claim. The trial court found the $500,000 invested by the Mastantuonos were the only funds invested in the loan.

The Mastantuonos received a few payments on the note. But La Prade made the payments out of the Mastantuonos' own funds. La Prade failed to notify them that the source of the payments was other than the maker of the note as required by Business and Professions Code section 10238, subdivision (k)(2).

La Prade had no formal system for disbursement of the draws under the construction loans. (Bus. & Prof. Code, § 10238, subd. (h)(4)(C).) He did not use a neutral third party escrow for disbursements (*id.* at subd. (h)(4)(A)); nor did he have the completed work independently verified prior to a disbursement (*id.* at subd. (h)(4)(D)).

Without notifying the Mastantuonos, La Prade disbursed all the construction loan funds to Graves before the project was complete. La Prade made the final disbursement so that Graves could apply the funds to a different project. La Prade trusted that Graves would return to the Mastantuonos' project once the other project was complete.

When all the funds had been disbursed, the Mastantuonos stopped receiving payments on the note. Pasquale Mastantuono began an investigation. He travelled from his home in Idaho to Templeton. He discovered that the home construction was not complete, most of his investment had been used to purchase the

3

land, all the construction funds had been disbursed, and that there were others claiming to be investors in the trust deed.

After Pasquale Mastantuono began his investigation, La Prade quitclaimed Creekside's interest in the trust deed to third parties who he claimed were additional investors.

The Mastantuonos unilaterally foreclosed on the trust deed. They prevailed at the foreclosure sale with a full credit bid of $820,312.60.

The Mastantuonos completed construction of the house with their own funds at a cost of $141,089. They listed the property for sale at $729,000. They sold it for $650,000, realizing net proceeds of $600,619.68. The proceeds were placed in a trust account pending the outcome of this action.

The Mastantuonos sued La Prade, Creekside and the parties who claimed to be additional investors. Among the causes of action were breach of fiduciary duty and quiet title. The defendants cross-complained for conversion, partition and declaratory relief.

The trial court found for the Mastantuonos on the complaint and cross-complaint. The court found the Mastantuonos were the only investors in the trust deed, and had a 100 percent interest in it. The court also found La Prade breached fiduciary duties he owed to the Mastantuonos. The court found the Mastantuonos would not have invested had La Prade disclosed the facts. The court awarded the Mastantuonos damages against La Prade and Creekside in the amount of $765,506.47, based on the benefit-of-the-bargain.

The court found that La Prade's misconduct would support an award of punitive damages. But the Mastantuonos did not introduce any evidence of La Prade's financial condition. Without such evidence, the court could not award punitive damages.

The court quieted title in the Mastantuonos against the other alleged investors.

DISCUSSION

I.

La Prade contends the evidence was insufficient to support the judgment.

La Prade's contention is based on a view of the evidence most favorable to him. But we take a different view of the evidence. In viewing the evidence, we look only to the evidence supporting the prevailing party. (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872.) We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. (*Ibid.*) Where the trial court or jury has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 376, pp. 434-435.) The trier of fact is not required to believe even uncontradicted testimony. (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028.)

Here the trial court based its judgment on breach of fiduciary duties. La Prade does not contest he was the Mastantuonos' fiduciary.

A real estate broker's fiduciary duty to his clients requires the highest good faith and undivided service and loyalty. (*Field v. Century 21 Klowden-Forness Realty* (1998) 63 Cal.App.4th 18, 25.) He is hired for his knowledge and skill. (*Ibid.*) He has a duty to disclose all material facts that would affect his principal's decision to enter into the transaction. (*Ibid.*) His duty to disclose material facts includes a duty to research and investigate in order to learn those facts. (*Ibid.*) His duty is not limited to simply disclosing facts; he also has a duty to counsel and advise his principal regarding the propriety and ramifications of the decision. (*Ibid.*)

La Prade's argument assumes the burden of proof was on the Mastantuonos. But once a fiduciary relationship is established, the burden shifts to the agent to show that he acted with the utmost good faith and that he made a full disclosure of all the material facts prior to the transaction. (*Jorgensen v. Beach "N' Bay Realty* (1981) 125 Cal.App.3d 155, 162.)

Here every phase of the transaction was tainted by La Prade's breach of a fiduciary duty. Naming a few will suffice. La Prade failed to disclose that: the loan would not be fully funded; over 80 percent of the loan funds would be used to purchase the land; the remaining balance would be far from adequate to complete construction; Creekside would be receiving a half percent administrative fee in spite of La Prade's representation there would be no such fee; interest payments received by the Mastantuonos were from their own money; there would be no formal system for draws; and that money would be disbursed from the construction loan fund to complete a different project in which the Mastantuonos had no interest.

In addition, La Prade failed to investigate and disclose Graves's financial condition; conveyed an interest in the loan adverse to the Mastantuonos; and committed multiple violations of the Business and Professions Code.

La Prade points to documents he provided to the Mastantuonos. The documents include a preliminary title report showing the land was owned by a person other than Graves and loan documents showing the principal to be $700,000. La Prade neglects to mention that the documents were provided after the Mastantuonos invested. He also neglects to mention misleading documents such as the crucial document that misrepresented Graves's financial condition.

What is clear is that the Mastantuonos did not understand the transaction until after default, when Pasquale Mastantuono undertook an investigation on his own. La Prade fails to cite any credible evidence that he ever discussed with the Mastantuonos the true nature of the transaction or the risks they were undertaking.

It is true the trial court found that the Mastantuonos should have been more diligent in reading the documents. But where there is a fiduciary relationship, failure of a client to read documents does not excuse a breach of duty. (See *Mazuran v. Stefanich* (1928) 95 Cal.App. 327, 331-332 [client's failure to read retainer agreement prepared by his attorney excused].)

La Prade argues the trial court failed to consider that this was a high-risk "hard money" loan. Certainly, every construction loan bears a higher risk to the lender

than a conventional purchase money loan. But this is not the typical construction loan. The same factors cited above showing a breach of fiduciary duty, show that the failure of this loan was a near certainty. No reasonable investor who was adequately informed of the facts would have invested in this loan.

La Prade argues that the Mastantuonos failed to prove there were no other investors. But as a fiduciary, the burden of proof is on La Prade. (*Jorgensen v. Beach 'N' Bay Realty*, *supra*, 125 Cal.App.3d at p. 162.) The court found that the Mastantuonos fully documented their investment. But for other alleged investors there are no copies of checks, no evidence of checks paid to lenders, no fully executed escrow documents, no settlement statements, and no assignments of Creekside's alleged interest in the note and deed of trust. La Prade argues that the evidence of other investors was uncontradicted. But La Prade confuses uncontradicted with credible. The trier of fact can reject even uncontradicted evidence as not credible. (*Sprague v. Equifax, Inc.*, *supra*, 166 Cal.App.3d at p. 128.) Here the court found there was no credible evidence that anyone other than the Mastantuonos invested in the loan.

La Prade argues the Mastantuonos' losses were caused by a downturn in the real estate market, not by any fault of his. But La Prade cites no authority that requires the trial court to accept his view of causation. In any event, even if a market downturn could be considered an independent superseding cause, a superseding cause will not relieve a defendant from liability if it was foreseeable. (See *Akins v. County of Sonoma* (1967) 67 Cal.2d 185, 199.) Market downturns occur too frequently to be deemed unforeseeable.

Moreover, after loan funds were expended to purchase the land, only $95,851 remained to complete a project with an estimated cost of $612,000; La Prade failed to properly supervise construction draws; he made interest payments to the Mastantuonos with their own money; he even disbursed construction loan funds so that Graves could apply them to a different project. The trial court could reasonably conclude the loan was bound to fail even in a good real estate market.

II.

La Prade contends the Mastantuonos' full credit bid at the foreclosure sale prevents any award of damages.

A full credit bid will not preclude an action for fraud against a fiduciary if the plaintiffs can demonstrate that their full credit bid was a proximate result of defendant's fraud, and that in the absence of such fraud they would not, in all reasonable probability, have made the bid. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1246-1247.)

Here La Prade did not raise the defense of the full credit bid in his pleadings or at trial. He raised it for the first time in his motion for a new trial. That the trustees deed was introduced in evidence at trial is not sufficient to raise the issue. The Mastantuonos were deprived of the opportunity to show reliance at trial. Under the circumstances, La Prade has waived the issue. (See *Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 879.)

III.

La Prade contends the trial court erred in awarding damages. He claims the proper measure of damages is the difference between "the actual value of the property at the time of the representation compared to the value as represented by [La Prade]." (Citing 6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1710, p. 1238.)

The measure of damages for breach of fiduciary duty is all loss proximately caused by the breach, including loss of the benefit-of-the-bargain. (*Fragale v. Faulkner* (2003) 110 Cal.App.4th 229, 238.) In this case, damages measured by the difference between the property as represented and the actual value would not be adequate to compensate the Mastantuonos for their losses. The trial court property determined their losses to be the principal amount of the loan plus interest, plus their costs for completing the home and foreclosing.

La Prade complains that the trial court made no findings on evidence that the house could have been completed for approximately half of what the Mastantuonos

spent and in less time. But it is obvious that the trial court simply did not find that evidence credible.

La Prade also complains that the trial court made no finding on the Mastantuonos' decision to foreclose nonjudicially, thus precluding a deficiency judgment as mitigation of damages. But Graves was insolvent. He filed for bankruptcy with net liabilities of $7 million. Pursuing a judicial foreclosure and a deficiency judgment would have been a waste of money here with no reasonable possibility of mitigating damages.

The judgment is affirmed. Costs are awarded to the Mastantuonos.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P. J.


We concur:



YEGAN, J.



PERREN, J.

9

Dodie A. Hartman, Judge

Superior Court County of San Luis Obispo

_____

Christian E. Iversen for Defendants, Cross-complainants and Appellants.

John F. Hodges, Conley Wyatt Anderson for Plaintiffs, Cross-defendants and Respondents.