**In re Robert E. REETZ, Debtor.**

**Julie Reetz, Plaintiff,**

**v.**

**Robert E. Reetz, Defendant.**

**Bankruptcy No. 00–11877–MAM—7. Adversary No. 00–1174.**

United States Bankruptcy Court, S.D. Alabama.

Jan. 31, 2001.

Denise A. Baschab, Mobile, AL, for Debtor.

Robert M. Galloway, Mobile, AL, for Plaintiff.

## ORDER AND JUDGMENT DECLARING DEBT TO BE DISCHARGEABLE

MARGARET A. MAHONEY, Chief Judge.

This matter is before the Court on the complaint of Plaintiff, Julie Reetz, to determine dischargeability pursuant to 11 U.S.C. § 523(a)(15) of Robert E. Reetz's obligation to pay the amounts owing on a Visa credit card. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court has the authority to enter a final order. For the reasons indicated below, the Court is declaring that the Visa debt of the parties is discharged by Robert Reetz's bankruptcy case.

### FACTS

■ The Circuit Court of Baldwin County, Alabama granted a judgment of divorce to the parties on November 12, 1999. The judgment of divorce incorporates a settlement agreement drafted by the parties. Relevant sections of the judgment of divorce state:

12. DEBTS: The following debts of the marriage shall be paid in the corresponding manner.

. . .

VISA # 4264290450082102, approximately $5,000.00 shall be paid for by the Defendant and the Plaintiff shall be held harmless therefrom.

. . .

The balance of the account as of the date of Robert Reetz's bankruptcy filing, according to a statement dated November 7, 2000, was $5,106.79. The statement included a finance charge for the prior month in the amount of $57.75. Finance charges have and will continue to accrue

until the debt is paid. The minimum payment for the account is $70.00.[1]

The debtor filed for relief pursuant to chapter 7 of the Bankruptcy Code on August 14, 2000. The Trustee has filed a Final Report of No Distribution which states that there is no property available for distribution to creditors. At the time Mr. Reetz filed bankruptcy, he was working as a boat repairman and according to his schedules his income after taxes was $601.50 per month and his monthly expenses were $588. In his bankruptcy schedules, Debtor listed the value of his personal property at $730 which included only household goods and furnishings and a 1971 Buick Skylark. Debtor also listed a student loan as an unsecured priority claim in the amount of $8,456.78. In his Statement of Financial Affairs Debtor listed his income from employment in 1998 as $11,021.00; in 1999 as $11,628.00; and in 2000 as $3,952.00 (to the date of filing his case).

Debtor testified that his monthly net income is currently $1,780.00. He listed expenses as follows:

| | |
|---|---|
| Fuel | $ 325.00 |
| Materials | $ 200.00 |
| Auto insurance | $ 25.00 |
| Loan on Van | $ 210.00 |
| Rent | $ 100.00 |
| Power | $ 45.00 |
| Cell phone | $ 50.00 |
| House phone | $ 20.00 |
| Storage Building | $ 60.00 |
| Loan from Parents (for legal fees) | $ 200.00 |
| Food | $ 100.00 |
| Child Support | $ 350.00 |
| Total Expenses | $1,685.00 |

The net available income after deducting all of the above listed expenses is $95. To explain some of his expenses, Mr. Reetz testified that he now works as a subcontractor installing satellite dishes and is required to do a lot of driving, use a cell phone, and pay for materials. Mr. Reetz is attempting to have his child support payment reduced from $350 to $150 per month in Circuit Court based on his financial circumstances but it has not been reduced at this time.

Julie Reetz works as a special education teacher and earns net pay of $ 1,698. She currently receives $350 per month in child support; however, if Mr. Reetz is successful in having his payment decreased, her income would decrease by $200. Currently her total income (with $350 in child support) is $2,048 per month. Ms. Reetz testified that her monthly expenses are as follows:

| | |
|---|---|
| Rent | $ 560.00 |
| Loan | $ 195.30 |
| Min. Payment on Credit Card Mr. Reetz is responsible for under the divorce decree | $ 70.00 |
| Credit Card (Capitol One) | $ 70.00 |
| Student Loan | $ 112.00 |
| Digiph PCS (cell phone) | $ 60.00 |
| BellSouth | $ 60.00 |
| Cable | $ 30.00 |
| Power | $ 85.00 |
| Gas/Car maintenance and repairs | $ 300.00 |
| Car insurance | $ 40.00 |
| Health Insurance/Medical bills/Medicine | $ 50.00 |
| Groceries/Cosmetics/Toiletries/Cleaning Supplies | $ 400.00 |
| After School Daycare | $ 110.00 |
| Haircut (for her, her daughter & her dog) | $ 30.00 |
| Daphne Elementary Costs | $ 15.00 |
| Lunch Money/My School costs | $ 65.00 |
| Entertainment | $ 120.00 |
| Miscellaneous | $ 50.00 |

1. The finance charge is relevant because it would continue to accrue if Ms. Reetz does not file bankruptcy even though Mr. Reetz has. His bankruptcy stopped the accrual of interest for him, but for § 523(a)(15) purposes, the debt must be viewed from Ms. Reetz's standpoint. Mr. Reetz's obligation to her would not be discharged unless the Visa bill were paid in full together with all finance charges which she owes and will continue to owe.

| | |
|---|---|
| Future Car Payment | $ 350.00 |
| Total Expenses | $2,772.30 |

Ms. Reetz expenses exceed her monthly income by $724.30. Ms. Reetz testified that she included an estimated future car payment in her list of expenses because the car she is driving is old and in bad condition and requires a lot of repairs. She admitted that when she does obtain another car her expense for "gas/car maintenance and repairs," listed at $300 per month, will go down.

## LAW

The issue before the Court is whether the obligation to pay the credit card debt to Visa is nondischargeable under § 523(a)(15). The Debtor's obligation to pay the credit card debt will be considered as a property settlement debt since there is no allegation that it is support.[2] A property settlement obligation may be discharged under § 523(a)(15) if either of two conditions exist. If under § 523(a)(15)(A) a debtor does not have the ability to pay a certain debt or if under § 523(a)(15)(B) the benefit to a debtor outweighs the detrimental consequences to the nondebtor spouse, the debt should be discharged. Once the former spouse establishes the existence of the debt and the debt is determined not to be alimony, maintenance or support, the Debtor has the burden of proof to establish his entitlement to a discharge under either subsection of § 523(a)(15). *In re Stone*, 199 B.R. 753, 783 (Bankr.N.D.Ala.1996). If the debtor presents sufficient evidence to establish inability to pay and/or detriment under § 523(a)(15)(A) and (B), the burden of going forward to rebut this evidence on ability to pay and/or detriment shifts to the former spouse. *Id.*

### A.

Section 523(a)(15)(A) requires the Court to determine whether paying the debt in question would reduce the debtor's income below the amount which is necessary for the support of himself and his dependents. First, the Court must determine what amount of money is reasonably necessary to support the debtor. The Court must then see if funds are left for payment of the credit card indebtedness.

A debtor's financial condition is determined by examining the debtor's current and future circumstances rather than the circumstances as of some fixed point in time. *Matter of McGinnis,* 194 B.R. 917, 920 (Bankr.N.D.Ala.1996). Mr. Reetz indicated that his net monthly income is $1780 and his total monthly expenses are $1,685. His income has increased since the filing of his bankruptcy because he has begun a new line of work. His expenses also increased due to the necessary expenditures for his business. Necessary business expenses are specifically included in § 523(a)(15)(A) as an expense to be deducted from income. Most of his expenses seem reasonable, even low in some instances. The only evidence offered towards whether his finances are likely to change in the future was that he was currently in the process of requesting that his child support be decreased by $200 due to his financial problems. This Court could only speculate as to the likelihood of Mr. Reetz succeeding in lowering his child support payments so the present support is what the Court is considering.[3] According to

2. The parties are correct as to the Visa debt's characterization. It is not a bill necessary for the ongoing support of the parties' child.

3. Mr. Reetz's income has increased since the time of his divorce in November 1999 and it is likely that his expenses have increased as well due to his business expenditures.

Debtor's testimony he has $95 left over after deducting all expenses listed. However, Debtor did not include any entertainment or miscellaneous expenses on his expense sheet and he stated that he needed some money to entertain his daughter when she visited. He did not suggest an amount for that purpose, but if the Court were to find that the amount was just half of what Ms. Reetz included for entertainment and miscellaneous, the expense would be $85. That leaves Mr. Reetz only $ 10 of excess income per month to pay toward the Visa debt.

 "A debtor has the ability to pay an obligation, for purposes of 11 U.S.C. § 523(a)(15), if the debtor has sufficient disposable income to pay all or a material part of the property settlement within a reasonable amount of time." *In re Smither*, 194 B.R. 102 (Bankr.W.D.Ky.1996). In this case, Mr. Reetz could only pay $10 per month towards the debt which does not even cover the minimum monthly payment and is less than the monthly finance charge on the current Visa balance.

The Court observed Mr. Reetz and found his testimony to be credible. The same is true of Ms. Reetz. The problem in this case is a common one—too little money and too many bills. The debtor cannot pay the obligation and the plaintiff has failed to prove the first prong of the § 523(a)(15) test.

### B.

 Mr. Reetz has proven he cannot pay the debt. Therefore, the Court need not consider § 523(a)(15)(B). However, the debtor meets this test as well so Ms. Reetz is unsuccessful under either test. Section 523(a)(15)(B) requires that the Court weigh the effects of the discharge on the debtor and his former spouse. Mr. Reetz will definitely receive a benefit if the debt is discharged.

Ms. Reetz does not have the monthly disposable income to afford the credit card debts either since she operates at a deficit each month. However, looking at Ms. Reetz expenses, some of them seem higher than necessary—at least in comparison to Mr. Reetz. Ms. Reetz has sole custody of their daughter which explains why some of her expenses are more than that of Mr. Reetz. Her rent is $560 as compared to the rent Mr. Reetz pays of only $100. Mrs. Reetz's "grocery/cosmetics/toiletries/cleaning supplies" expense is $400 per month as compared to $100 listed as "food" for Mr. Reetz. Ms. Reetz also pays for a cell phone, which unlike Mr. Reetz, does not appear to be necessary for her job. She has included in her list of monthly expenses $30 for cable, $30 for haircuts, $120 for entertainment and $50 for miscellaneous. All of these could be reduced or eliminated to make ends meet. In addition she testified that her "gas/car maintenance and repairs" expense would decrease if she obtained another car as she intends to do. With the reduction of rent to $460, groceries to $300, haircut expense to $15, entertainment to $100, miscellaneous to $ 25, cable to $0, cell phone to $0, and gas and car maintenance to $100 this Court finds that her expenses would be reduced by $550. In addition Ms. Reetz has included in her expenses $70 per month towards the debt that is at issue in this matter. However, even if these amounts were subtracted from her list of expenses Ms. Reetz would still have a deficit of over $100. In addition there is the possibility that her income would be reduced by up to another $200 if Mr. Reetz is successful in decreasing his child support obligation. Ms. Reetz does not have the monthly disposable income to afford the credit card debt. Ms. Reetz may find it necessary to file bankruptcy. This would be the case even without the consid-

eration of the disputed credit card debt since she operates at a deficit each month. It is not uncommon for divorcing parties to file bankruptcy in order to deal with marital debts. One or both may be required to file bankruptcy whichever decision the Domestic Relations Court makes.

 The Court must "compare the standard of living of the debtor against the standard of living of his or her spouse, former spouse and/or children to determine whether the debtor will 'suffer more' by not receiving a discharge of the debts in question than his or her spouse would suffer if the obligations were discharged." *In re Smither*, 194 B.R. 102, 110 (Bankr. W.D.Ky.1996). If the credit card debt is not discharged for Mr. Reetz, he will need to pay at least $70 per month for many years to pay off the Visa debt as the principal would decrease very slowly at that rate due to the finance charges. The detriment to him is substantial. There is no room in his budget for the payment. Ms. Reetz, if the credit card debt were discharged, would have more debt to pay than she already does. Even at her present debt level without the Visa debt, she cannot meet her expenses. The additional debt load may cause her to file bankruptcy sooner than she otherwise might, but since her income does not meet her expenses it will likely happen anyway at some point in time. Therefore, the fact that she may have to file bankruptcy is not a consequence of the credit card debt alone. Therefore, the Court concludes that detriment to Ms. Reetz is not as substantial as the detriment to Mr. Reetz. A bankruptcy court should not deny the debtor his fresh start simply because his former wife has chosen not to seek the same relief on her own behalf when her circumstances warrant it. *In re Daiker*, 5 B.R. 348, 352 (Bankr.D.Minn.1980). See also *In re Hill*, 184 B.R. 750, 756 (Bankr.N.D.Ill.1995).

THEREFORE, IT IS ORDERED AND ADJUDGED that the obligation of the debtor, Robert E. Reetz, to pay the Visa debt of Robert E. Reetz and Julie Reetz provided for in their judgment of divorce in the Circuit Court of Baldwin County dated November 12, 1999, is DISCHARGEABLE and judgment is awarded for the defendant.