**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No. CC-13-1104-PaKiTa |
| ) | |
| ASHVINDER SINGH, ) | Bankr. No. 11-22770-AA |
| ) | |
| Debtor. ) | Adv. Proc. 12-01045-AA |
| _____ ) | |
| ASHVINDER SINGH, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| GURMUKH SINGH; JASBIR KAUR, ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Submitted Without Oral Argument[2]
on July 25, 2014

Filed - August 7, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Charles E. Rendlen, III, Bankruptcy Judge, Presiding[3]

Appearances:  Appellant Ashvinder Singh, pro se, on brief; Gary
G. Barsegian on brief for appellees Gurmukh Singh
and Jasbir Kaur.

_____

[1]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2]  By order entered on April 2, 2014, and after notice to the parties and review of the briefs and record, the Panel unanimously determined oral argument is not needed.  Rule 8012.

[3]  U.S. Bankruptcy Judge for the Eastern District of Missouri, visiting judge.

Before: PAPPAS, KIRSCHER and TAYLOR, Bankruptcy Judges.

Chapter 7[4] debtor Ashvinder Singh ("Ashvinder")[5] appeals the judgment of the bankruptcy court excepting from discharge the debt he owed to appellees Gurmukh Singh ("Gurmukh") and Jasbir Kaur ("Jasbir", and together, the "Appellees") under § 523(a)(2)(A). We AFFIRM.

## FACTS

The Appellees and Ashvinder, their nephew, are natives of India. The record does not indicate when Appellees came to America; however, the parties agree that Ashvinder came to live with Appellees at their home in California in 2000, and was still living there in 2005. The parties also agree that Ashvinder executed a Promissory Note in favor of the Appellees, dated December 6, 2005, in which he agreed to pay them $30,000 in accordance with the "Wells Fargo (line of credit) bank terms." Beyond these bare facts, there is little agreement among the parties.

**The Alleged Representations Made by Ashvinder to Jasbir**

At the heart of this appeal is the Appellees' contention that Ashvinder made several false representations to Jasbir, on

---

[4] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure 1–86.

[5] Because several parties in this appeal have the same surname, for convenience we refer to each by their first name; no disrespect is intended.

-2-

which she relied to the Appellees' detriment. Because the parties contest whether the representations were made, we review the trial testimony of the parties, together with the bankruptcy court's credibility determinations set forth in its Trial Memorandum, entered February 20, 2013 (the "Memorandum").

Apparently, Ashvinder approached Gurmukh some time in 2005, seeking a loan of $30,000. Gurmukh testified that he refused Ashvinder's request because Ashvinder already owed him $32,000 that he had not repaid. The bankruptcy court found Gurmukh's testimony on this point credible.

Jasbir testified that, in November 2005, Ashvinder told her that her husband, Gurmukh, intended to leave her and to return to India, taking all the family's money with him. Ashvinder suggested that Jasbir and Ashvinder go to Wells Fargo Bank where she could draw funds[6] on the Appellees' home equity line of credit. Ashvinder promised to take care of Jasbir and her daughters after Gurmukh left her. Jasbir's adult daughters, Avneet and Supreet Kaur ("Avneet" and "Supreet"), were present when Ashvinder made these representations to Jasbir, and they corroborated their mother's testimony. The bankruptcy court found the testimony of Jasbir, Avneet, and Supreet credible.

Gurmukh denied that he ever intended to leave Jasbir, take the family's money, and return to India. The bankruptcy court

---

[6] There is some inconsistency in the record regarding the amount of money withdrawn from the Wells Fargo account. At different points in the record, the bankruptcy court and parties refer to $137,000, $140,000, and approximately $140,000. The precise amount is not material to the issues on appeal.

also found this testimony credible.

Despite the testimony of the other witnesses, Ashvinder insisted that he never told Jasbir that her husband was leaving her, taking the family money, and returning to India or that he ever suggested that Jasbir withdraw funds from the bank. The bankruptcy court refused to credit Ashvinder's account of the facts, noting that he provided "little credible testimony." Memorandum at 5.

Jasbir testified that she went with Ashvinder to Wells Fargo to withdraw $137,000. Ashvinder spoke for Jasbir with a bank representative because she was not comfortable speaking English. Jasbir's only action at Wells Fargo was to sign the transaction authorization, acting upon Ashvinder's direction. She and Ashvinder then immediately went to a Washington Mutual Bank branch, where they opened a new account and deposited the funds. Jasbir testified that she was not aware that Ashvinder had opened this as a joint account. The bankruptcy court found Jasbir's testimony on these facts credible.

Ashvinder acknowledged that he drove Jasbir to Wells Fargo, but testified that he did not go into the bank with her. Ashvinder also denied going to Washington Mutual and denied opening a new account there with Jasbir. The bankruptcy court found that this testimony was not credible.

The bankruptcy court received documentary evidence at trial including a statement of activity on the joint account of Jasbir and Ashvinder at Washington Mutual for the period of November 25, 2005 to December 22, 2005, which showed a deposit of $140,500 and a withdrawal of $140,500. Supreet also testified that she was a

-4-

teller at Washington Mutual at the time and was aware that the account set up with the initial deposit bore the names of both Ashvinder and Jasbir.

### The Promissory Note and Settlement Agreement

The parties also completely dispute the events leading up to the execution of the Promissory Note.

Gurmukh testified that he discovered $140,000 was drawn from his equity line account at Wells Fargo, that he asked his wife about the circumstances, and that he then approached Ashvinder. According to Gurmukh, Ashvinder told him that Gurmukh had refused to loan him $30,000, so Ashvinder obtained the funds "his way." Ashvinder said that he would return $110,000, if Gurmukh would agree to lend him the $30,000. Gurmukh went with Ashvinder to Washington Mutual, where Ashvinder had the bank give him a cashier's check for $110,000 payable to Gurmukh. Ashvinder kept the remaining $30,000, and this was the principal amount used in the Promissory Note that Ashvinder then wrote out and gave to Gurmukh and Jasbir. Because Gurmukh had no other funds, he felt he was forced to sign the Promissory Note agreeing to its terms.

The Promissory Note provides:

> I Gurmukh Singh and Jasbir Kaur (joint party) willingly, loan Ashvinder Singh the amount of thirty thousand dollars, and it is to be paid back with interest according to the Wells Fargo (line of credit) Bank terms and conditions set thereby, and minimum monthly payment is required on the loan according to the Wells Fargo Bank terms and conditions. I Gurmukh Singh and Jasbir Kaur will provide loan statements for the purposes of determining loan payment (minimum monthly due) until the loan is paid in full.

The Promissory Note was dated December 6, 2005, and signed by Gurmukh, Jasbir, and Ashvinder, whose signatures were notarized

on the same date.

Although Ashvinder admits that he drafted the Promissory Note and that he signed it, he disputes all other aspects of Gurmukh's testimony regarding events leading to its creation. According to Ashvinder's testimony, he had no prior debt owed to Gurmukh. At the time of completing the Promissory Note, he approached Gurmukh to borrow $30,000 to pay his college tuition, and Gurmukh told him "I will be more than happy to assist you with that." Ashvinder testified that Gurmukh gave him $30,000 in cash and that he and Appellees signed the Promissory Note the same day (December 6, 2005). Ashvinder denied ever taking money from any joint account at Washington Mutual. He also denied going to the bank with Gurmukh or giving Gurmukh a cashier's check for $110,000.

The bankruptcy court made a general finding concerning Ashvinder's credibility and his testimony about the events leading up to the signing of the Promissory Note: "The Defendant provided little credible testimony regarding the circumstances giving rise to the creation of the Promissory Note." Memorandum at 5. Of course, in addition to considering the parties' conflicting testimony, the bankruptcy court was given a copy of the Washington Mutual $110,000 cashier's check executed on December 6, 2005, payable to Gurmukh Singh, and deposited in the Appellees' equity credit account at Wells Fargo.

As can be seen, the Promissory Note did not provide specific amounts for repayment or a payment schedule. It is not disputed that Ashvinder made some monthly payments to the Appellees under the Promissory Note, but he then defaulted at some point not

-6-

clear in the record.

The Appellees sued Ashvinder in Los Angeles Superior Court in November 2007 for fraud and breach of contract. The parties reached a Settlement Agreement, which was approved by the state court on September 17, 2008. According to the terms of the Settlement Agreement, the total amount of Ashvinder's debts to the Appellees was fixed at $39,000. Ashvinder agreed to make monthly payments to the Appellees of $150 for the first two years, $250 in the third year, $275 in the fourth year, $300 in the fifth through seventh years, $325 in the eighth and ninth year, with any remaining balance payable on September 15, 2018.[7]

Ashvinder made the required payments for two years, but defaulted in October 2010. The Appellees returned to the Superior Court to seek enforcement of the Settlement Agreement. The record does not reveal subsequent events in the state court.

### The Bankruptcy Case and Adversary Proceeding

Ashvinder filed a chapter 7 petition on November 1, 2011. On his schedule F, he listed a debt of $35,000 for a "personal loan" from the Appellees.

The Appellees commenced an adversary proceeding on February 3, 2012, seeking an exception to discharge of Ashvinder's debt to them under § 523(a)(2)(A). The complaint alleged that Ashvinder had created an elaborate scheme to defraud the Appellees. They alleged that after Gurmukh refused to lend Ashvinder $30,000, Ashvinder made false representations to Jasbir

___

[7] The Settlement Agreement did not provide for accruing interest on the debt.

-7-

that persuaded her to draw the funds from the Wells Fargo equity account, that he made the representations with the intent to deprive the Appellees of their funds, and that Jasbir justifiably relied on the lies because Ashvinder was a close family member. Ashvinder's answer to the complaint denied these allegations and asserted various affirmative defenses. Although the Appellees alleged that Ashvinder owed them other debts, the parties stipulated before trial that the only debt for which the Appellees were seeking an exception to discharge was the debt evidenced by the Promissory Note.

A trial was conducted in the bankruptcy court on January 3, 2014. As discussed above, the court heard testimony from Gurmukh, Jasbir, Ashvinder, Avneet, and Supreet. At the close of argument, the court requested post-trial briefs from the parties. The bankruptcy court also observed at that time: "I have got some serious credibility decisions to make in this case." Trial Tr. 155:12-13.

In its Memorandum entered February 20, 2013, the bankruptcy court made extensive and precise credibility findings concerning each of the disputed material facts leading up to creation of the Promissory Note, finding without exception that the versions of the facts stated by Gurmukh, Jasbir, Avneet, and Supreet were credible, and that Ashvinder had "provided little credible testimony regarding the circumstances giving rise to the creation of the Promissory Note." Memorandum at 5. After discussing the relevant case law, the bankruptcy court concluded that the Appellees had established by a preponderance of the evidence all required elements for an exception to discharge. The court

calculated the Appellees' damages as follows: (1) the parties had stipulated that only funds traceable to the Promissory Note were at issue in the trial; (2) $21,000 of the $39,000 Settlement Agreement was traceable to the Promissory Note; (3) giving Ashvinder credit for payments made on the Promissory Note resulted in a $18,092.28 debt excepted from discharge in Ashvinder's bankruptcy under § 523(a)(2)(A).

The bankruptcy court entered an Order and Judgment on February 20, 2013. Ashvinder filed a timely appeal on March 6, 2013.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). The Panel has jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court erred in determining that Ashvinder's debt to the Appellees was excepted from discharge under § 523(a)(2)(A).

**STANDARD OF REVIEW**

Whether a claim is excepted from discharge under § 523(a)(2)(A) presents mixed issues of law and fact which we review de novo. Diamond v. Kolcum (In re Diamond), 285 F.3d 822, 826 (9th Cir. 2001). We review the bankruptcy court's findings of fact for clear error. Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 378 (9th Cir. BAP 2011). Clear error is found when the reviewing court has a definite and firm conviction that a mistake has been committed. Lewis v. Ayers, 681 F.3d 992, 998 (9th Cir. 2012). De novo review requires the Panel to

independently review an issue, without giving deference to the bankruptcy court's conclusions. First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.), 439 F.3d 558, 561 (9th Cir. 2006).

## DISCUSSION

The Panel is handicapped in this appeal by Ashvinder's failure to satisfy minimum requirements for the form and substance of his briefs. While Ashvinder is acting pro se, and we recognize our responsibility to view his submissions liberally, Hernandez v. Holland, 750 F.3d 843, 858 (9th Cir. 2014), even pro se litigants are required to present a reasoned argument and to abide by our rules of procedure. Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995). Ashvinder submitted a two-paragraph brief, composed almost exclusively of his conclusory statements, with no citations to cases or other authorities and no excerpts of record.

The Panel is not required to search the record unaided for error. Dela Rosa v. Scottsdale Mem. Health Sys, Inc., 136 F.3d 1241 (9th Cir. 1998). We are aided, however, by the comprehensive Memorandum of the bankruptcy court, including the court's extensive, targeted credibility rulings concerning what appear to be the key disputed fact findings. The Appellees also provided adequate excerpts of record. Therefore, we have a sufficient record to review the bankruptcy court's decision to except Ashvinder's debt to the Appellees from discharge.

**The bankruptcy court did not err in deciding that Ashvinder's debt to the Appellees was excepted from discharge.**

Section 523(a)(2)(A) provides that: "A discharge . . . does

-10-

not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by — (A) false pretenses, a false representation, or actual fraud[.]"  To prove that a debt should be excepted from discharge under § 523(a)(2)(A), a creditor must establish five elements: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010); Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 35 (9th Cir. BAP 2009).  A creditor bears the burden of proving all five elements by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991); In re Weinberg, 410 B.R. at 35.

  1. Misrepresentation.  In the bankruptcy court's words,

> Plaintiff [Jasbir] Kaur and her daughters provided credible testimony that the Defendant told them Plaintiff [Gurmukh] Singh was leaving for India in order to convince Plaintiff Kaur to withdraw the $140,000.  The Plaintiffs provided credible testimony that the Defendant's story about Plaintiff Singh leaving for India was untrue.

Memorandum at 9.  The bankruptcy court also found Ashvinder's testimony denying that he made these representations to Jasbir lacking in credibility.  Here the bankruptcy court considered the testimony of five individuals, three of whom testified that Ashvinder made the statement in their presence, and two of whom testified that the statements were false; only Ashvinder

-11-

testified that he never made the statements.

Whether there has been a misrepresentation is a finding of fact reviewed for clear error. Candland v. Ins. Co. Of N. Am. (In re Candland), 90 F.3d 902, 904 (9th Cir. 1987). Where there are two permissible views of the evidence, the factfinders choice between them cannot be clearly erroneous. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574, (1985). As an appellate tribunal, we must defer to the bankruptcy court's findings based on credibility and testimonial evidence. Rule 8013; Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc., 709 F.3d 872, 880 (9th Cir. 2014) (where a trial court's findings are based on evaluation of credibility, "a reviewing court should ordinarily give those findings great deference.").

We conclude that the bankruptcy court did not clearly err in finding that Ashvinder made the false representation to Jasbir that her husband intended to leave her and her family and to take all of the Appellees' money to India.

2. Knowledge of the falsity or deceptiveness of a statement or conduct, and an intent to deceive. Scienter and intent to defraud may be proven through circumstantial evidence, or by inferences drawn from a course of conduct. McCray v. Barrack (In re Barrack), 117 B.R. 598, 606 (9th Cir. BAP 1998). Intent to deceive may be inferred from the totality of the circumstances. Tallant v. Kaufman (In re Tallant), 281 B.R. 58, 66 (9th Cir. BAP 1998).

In this case, the bankruptcy court made adequate findings concerning Ashvinder's intent to defraud the Appellees:

It is a fair inference that the Defendant knew his

-12-

story was untrue. The Plaintiffs provided additional credible testimony leading to the inference that the Defendant intentionally mislead Plaintiff Kaur and transferred the fraudulently obtained $140,000.00 into his sole possession in order to gain the necessary leverage to force the Plaintiffs to sign the Promissory Note. . . . Finally, the copy of the cashier's check and the Washington Mutual Bank Statement support a finding that the Defendant knowingly made misrepresentations and engaged in deceptive conduct with intent to deceive. The Defendant provided no credible testimony to rebut any of the foregoing inferences.

Memorandum at 10.

Here the bankruptcy court concluded, based in part on his subsequent conduct, that Ashvinder knew the falsity of his representations to Jasbir and intended to deceive her. It is well established that trial courts can consider a party's subsequent conduct in determining knowledge and fraudulent intent as part of the totality of the circumstances. Williamson v. Busconi, 87 F.3d 602, 603 (1st Cir 1996); Stein v. Tripp (In re Tripp), 357 B.R. 544, 548 (Bankr. D. Ariz. 2006 ("a court may consider subsequent conduct to the extent that it provides an insight into the debtor's state of mind at the time of the representations"). And, again, witness credibility plays an important role in the trial court's determination of knowledge and fraudulent intent. Household Credit Servs. v. Ettell (In re Ettell), 188 F.3d 1141, 1143 (9th Cir. 1999).

The bankruptcy court was presented with clearly divergent testimony regarding the subsequent conduct of Ashvinder in fraudulently obtaining possession of the $140,000 from Jasbir. In a stark example, Ashvinder testified that he did not drive Jasbir to Washington Mutual and that he did not open a joint checking account with her in which the $140,000 was deposited.

-13-

Yet this testimony was contradicted, not only by Jasbir's testimony, but also by testimony from Supreet, a teller at the relevant Washington Mutual branch, that she observed that a joint account had been established, and that it bore the names of both Jasbir and Ashvinder. And, of course, the bankruptcy court was also given copies of the Washington Mutual statement of account indicating that it was a joint account in the names of Jasbir and Ashvinder.

Whether a party has knowledge of falsity and intends to deceive are questions of fact reviewed for clear error. Runnion v. Pedrazzini (In re Pedrazzini), 644 F.2d 756, 758 (9th Cir. 1981). Based on the record and evidence, and given its credibility determinations, we conclude that the bankruptcy court did not clearly err when it determined that when Ashvinder made the representation that Gurmukh would leave Jasbir and take the family money with him, that he knew the statements were false, that he made the statements with the intent to deceive Jasbir, and that he successfully obtained the funds through his fraudulent representations.

3. Justifiable reliance. Section 523(a)(2)(A) requires that a creditor prove it justifiably relied on the debtor's false statements or misrepresentations. Field v. Mans, 516 U.S. 59, 74-75 (1995). Justifiable reliance is a subjective standard, which turns on a creditor's knowledge under the particular circumstances. Citibank (South Dakota), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1090 (9th Cir. 1996). "Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the

-14-

particular case, rather than of the application of a community standard of conduct to all cases." Field, 516 U.S. at 70.

The bankruptcy court found that Jasbir justifiably relied on Ashvinder's representations:

Plaintiff [Jasbir] Kaur and her daughters provided credible testimony that they all believed the Defendant's story about Plaintiff Singh leaving for India. The Defendant was evidently like a son to the Plaintiffs. Plaintiff [Jasbir] Kaur had little reason to doubt the Defendant and there was no other immediately available information that would have discredited his story. Plaintiffs provided further credible testimony that they believed the Defendant would keep the $140,000 if they did not sign the Promissory Note.

Memorandum at 11.

Both Jasbir and Gurmukh testified that they regarded Ashvinder, whom they had helped raise, like a son; Avneet and Supreet testified that they considered Ashvinder like a brother, not just a cousin. The case law supports the notion that a creditor's reliance on a family member's, or close family friend's, representations may be justifiable. Ireland v. Ireland (In re Ireland), 2004 Bankr. LEXIS 1460 *23 (Bankr. D. Kansas 2004) (a family relationship "weighs heavily" in favor of finding justifiable reliance); In re Spar, 176 B.R. 321, 328 (Bankr. S.D.N.Y. 1994); see also In re Phillips, 804 F.2d 930, 933 (6th Cir. 1986) (finding that a family relationship even supported a finding of reasonable reliance, a more exacting standard than justifiable reliance).

Whether a party justifiably relied on a debtor's representation to his or her detriment is a question of fact reviewed for clear error. Deitz v. Ford (In re Deitz), 469 B.R. 11, 34 (9th Cir. BAP 2012), aff'd and adopted ___ F.3d ___, 2014

-15-

WL 3703834 (9th Cir. July 28, 2014). We conclude that the bankruptcy court did not clearly err in finding that Jasbir justifiably relied on Ashvinder's false representations.

4. <u>Causation</u>. To support a fraud exception to discharge, the Appellees must show that any damages they suffered were proximately caused by Jasbir's justifiable reliance on Ashvinder's misrepresentations and deceptive conduct. <u>In re Weinberg</u>, 410 B.R. at 35. On this topic, the bankruptcy court found:

> The Plaintiffs presented sufficient evidence showing that the Promissory Note only came into being due to the Defendant's misrepresentations and deceptive conduct. The Plaintiffs made a sufficient showing that they would never have signed the Promissory Note had it not been for the Defendant's misrepresentations and deceptive conduct. Further, the Plaintiffs made a sufficient showing that at least a portion of the Settlement Amount is traceable to the Promissory Note. . . . So, the portion of the Settlement Amount traceable to the Promissory Note was proximately caused by the Plaintiff's justified reliance on the Defendant's misrepresentations and deceptive conduct and is nondischargeable pursuant to § 523(a)(2)(A).

Memorandum at 11.

Ashvinder has not challenged the bankruptcy court's computation of the amount he owes to the Appellees on account of the subject transactions. We also think the bankruptcy court's approach is sound.

Ashvinder's misrepresentations to Jasbir, which deprived the Appellees of $140,000, eventually resulted in the parties' execution of the Promissory Note. When Ashvinder defaulted under the Promissory Note, the Appellees were required to pursue collection of his debt to them in state court, an action eventually resolved in the Settlement Agreement. Ashvinder then

-16-

later defaulted in performing his obligations under the Settlement Agreement.

"Once it is established that specific money or property has been obtained by fraud . . . 'any debt' arising therefrom is excepted from discharge." Cohen v. de la Cruz, 523 U.S. 213, 218 (1998). And it is of no moment that the debt originally arising from a debtor's fraud is later incorporated into the terms of a settlement agreement. Archer v. Warner, 538 U.S. 314, 321 (2003) (denying discharge of debt for money promised in a settlement agreement that settled and released a prior fraud claim).

Here, the bankruptcy court properly linked Ashvinder's liability to the Appellees to the original transaction involving the equity account, to the Promissory Note, and then to the Settlement Agreement, determining that the balance due from Ashvinder to the Appellees, after credits for payments, was $18,092.28. In a discharge exception action, the bankruptcy court's findings concerning proximate cause and calculation of damages are findings of fact reviewed for clear error. Britton v. Price (In re Britton), 950 F.2d 602, 605 (9th Cir. 1991). Here, the bankruptcy court did not clearly err in its calculations of the amount due from Ashvinder to the Appellees.

Having determined that the Appellees established the required facts, we conclude that the bankruptcy court did not err in deciding that Ashvinder's debt was excepted from discharge.

**CONCLUSION**

We AFFIRM the judgment of the bankruptcy court.

-17-